# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SHEILA KAY DELGADO, | No. 1:15-CV-03190-FVS |
| Plaintiff, | REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| | |
| Defendant. | ECF Nos. 12, 15 |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 12, 15. This matter has been referred to the undersigned magistrate judge for issuance of a report and recommendation. ECF No. 11. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, IT IS RECOMMENDED Plaintiff's Motion (ECF No. 12) be denied and Defendant's Motion (ECF No. 15) be granted.

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an

1    ALJ's decision on account of an error that is harmless." *Id*.  An error is harmless

2    "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

3    *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's

4    decision generally bears the burden of establishing that it was harmed.  *Shinseki v.*

5    *Sanders*, 556 U.S. 396, 409-410 (2009).

6                          **FIVE-STEP EVALUATION PROCESS**

7            A claimant must satisfy two conditions to be considered "disabled" within

8    the meaning of the Social Security Act.  First, the claimant must be "unable to

9    engage in any substantial gainful activity by reason of any medically determinable

10   physical or mental impairment which can be expected to result in death or which

11   has lasted or can be expected to last for a continuous period of not less than twelve

12   months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be

13   "of such severity that he is not only unable to do his previous work[,] but cannot,

14   considering his age, education, and work experience, engage in any other kind of

15   substantial gainful work which exists in the national economy."  42 U.S.C. §

16   1382c(a)(3)(B).

17           The Commissioner has established a five-step sequential analysis to

18   determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

19   416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work

20   activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial

1  gainful activity," the Commissioner must find that the claimant is not disabled.  20

2  C.F.R. § 416.920(b).

3       If the claimant is not engaged in substantial gainful activity, the analysis

4  proceeds to step two.  At this step, the Commissioner considers the severity of the

5  claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from

6  "any impairment or combination of impairments which significantly limits [his or

7  her] physical or mental ability to do basic work activities," the analysis proceeds to

8  step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy

9  this severity threshold, however, the Commissioner must find that the claimant is

10  not disabled.  20 C.F.R. § 416.920(c).

11       At step three, the Commissioner compares the claimant's impairment to

12  severe impairments recognized by the Commissioner to be so severe as to preclude

13  a person from engaging in substantial gainful activity.  20 C.F.R. §

14  416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the

15  enumerated impairments, the Commissioner must find the claimant disabled and

16  award benefits.  20 C.F.R. § 416.920(d).

17       If the severity of the claimant's impairment does not meet or exceed the

18  severity of the enumerated impairments, the Commissioner must pause to assess

19  the claimant's "residual functional capacity."  Residual functional capacity (RFC),

20  defined generally as the claimant's ability to perform physical and mental work

1    activities on a sustained basis despite his or her limitations, 20 C.F.R. §

2    416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

3           At step four, the Commissioner considers whether, in view of the claimant's

4    RFC, the claimant is capable of performing work that he or she has performed in

5    the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is

6    capable of performing past relevant work, the Commissioner must find that the

7    claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of

8    performing such work, the analysis proceeds to step five.

9           At step five, the Commissioner considers whether, in view of the claimant's

10   RFC, the claimant is capable of performing other work in the national economy.

11   20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner

12   must also consider vocational factors such as the claimant's age, education and

13   past work experience.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant is capable of

14   adjusting to other work, the Commissioner must find that the claimant is not

15   disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to

16   other work, analysis concludes with a finding that the claimant is disabled and is

17   therefore entitled to benefits.  20 C.F.R. § 416.920(g)(1).

18          The claimant bears the burden of proof at steps one through four above.

19   *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

20   step five, the burden shifts to the Commissioner to establish that (1) the claimant is

capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.920(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff applied for Title XVI supplemental security income benefits on January 21, 2012.  Tr. 207-12, 258.  Plaintiff initially alleged disability beginning March 24, 2003, but amended the alleged onset date to May 17, 2011.  Tr. 58, 207. The application was denied initially, Tr. 122-25, and on reconsideration, Tr. 129-30.  Plaintiff appeared at a hearing before an administrative law judge (ALJ) on March 4, 2014.  Tr. 41-63.  On March 17, 2014, the ALJ denied Plaintiff's claim. Tr. 18-32.

At step one of the sequential evaluation analysis, the ALJ found Plaintiff has not engaged in substantial gainful activity since January 21, 2012, the application date.  Tr. 20.  At step two, the ALJ found Plaintiff has the following severe impairments:  degenerative disc disease and degenerative joint disease of the spine; obesity; affective disorder; anxiety disorder; and personality disorder.  Tr. 21.  At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 23.  The ALJ then concluded that Plaintiff has the RFC to:

1

2

> Lift and/or carry 20 pounds occasionally and 10 pounds frequently.
> She can stand and/or walk for about six hours in an eight-hour
> workday with normal breaks.  The claimant can sit for about six hours
> in an eight-hour workday with normal breaks.  She has no limitations
> pushing and/or pulling at this exertional level.  The claimant can
> occasionally climb ramps and stairs and should never climb ladders,
> ropes, or scaffolding.  She can frequently balance, stoop, kneel,
> crouch, and crawl.  The claimant has no manipulative, visual or
> communication limitations.  She should avoid concentrated exposure
> to vibration, hazardous machinery and working at unprotected heights.
> The claimant has the mental capability to adequately perform the
> mental activities generally required by competitive, remunerative
> work as follows:  she can understand, remember and carry out simple
> instructions required of jobs classified at a specific vocational
> preparation (SVP) level 1 or 2 or unskilled work.  The claimant can
> make judgments on simple work related decisions, respond
> appropriately to supervision and coworkers, and deal with occasional
> changes in a work environment that requires only occasional exposure
> to or interaction with the general public.

Tr. 24.

At step four, the ALJ found Plaintiff has no past relevant work.  Tr. 31.  At

step five, after considering the testimony of a vocational expert, the ALJ found

there are jobs that exist in significant numbers in the national economy that

Plaintiff can perform, such as production assembler or hand packager.  Tr. 31-32.

Thus, the ALJ concluded Plaintiff has not been under a disability since January 21,

2012, the date the application was filed.  Tr. 32.

1   On September 3, 2015, the Appeals Council denied review of the ALJ's

2   decision, Tr. 1-3, making the ALJ's decision the Commissioner's final decision for

3   purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

4                                                    **ISSUES**

5       Plaintiff seeks judicial review of the Commissioner's final decision denying

6   her supplemental security income (SSI) benefits under Title XVI of the Social

7   Security Act.  Plaintiff raises the following issues for review:

8       1.      Whether the ALJ properly declined to reopen Plaintiff's prior

9               application;

10      2.      Whether the ALJ properly evaluated the medical opinion evidence;

11              and

12      3.      Whether the ALJ made a legally sufficient credibility determination.

13  ECF No. 12 at 5-20.

14                                              **DISCUSSION**

15  **A.    Prior Application**

16      Plaintiff contends the ALJ improperly declined to reopen a prior application

17  for SSI benefits.  ECF No. 12 at 5-8.  The regulations provide that if a claimant is

18  dissatisfied with a determination or decision but does not request review within the

19  stated period, the claimant generally loses the right to further review and the

20  decision becomes final.  20 C.F.R. § 416.1487(a).  However, under certain

1  circumstances, a prior determination which is otherwise final may be reopened or

2  revised upon request or upon the initiative of the Commissioner.  20 C.F.R. §

3  416.1487(b).  A prior determination may be reopened in one of three

4  circumstances:  (1) within 12 months of the date of the notice of the initial

5  determination, for any reason; (2) within two years of the date of the notice of the

6  initial determination for "good cause"; or (3) at any time if the decision involved

7  fraud.  20 C.F.R. § 416.1488.

8      The ALJ noted that Plaintiff filed two previous applications for SSI benefits:

9  the first on March 21, 2005, which was denied initially and no further review was

10  requested; and the second on May 17, 2011, which was denied initially on August

11  16, 2011, and upon reconsideration on November 2, 2011.  Tr. 18.  Plaintiff did not

12  request further review of the second application and the ALJ therefore found

13  administrative finality applied to the prior claim.  Tr. 18.  The ALJ found there was

14  no basis for reopening Plaintiff's previous SSI applications.  Tr. 18.

15      Plaintiff contends the ALJ erred based on internal agency guidelines which

16  indicate that a request to reopen is implied in a new application alleging an onset of

17  disability during a previously adjudicated time period.  ECF No. 12 at 5-6 (citing

18  HALLEX I-2-9-20A[1]).  Defendant argues the Commissioner's decision not to

19  

20  [1] *Available at* www.ssa.gov/OP_Home/hallex/I-02/I-2-9-20.html.

reopen a prior claim is discretionary and is not subject to judicial review.  ECF No. 15 at 5 (citing *Califano v. Sanders*, 430 U.S. 99, 107-09 (1977); *Udd v. Massanari*, 245 F.3d 1096, 1098-99 (9th Cir. 2001); *Davis v. Schweiker*, 665 F.2d 934, 935 (9th Cir. 1982)).

The general rule is that the Commissioner's decision not to reopen a claim for benefits is not a "final decision" within the meaning of 42 U.S.C. § 405(g), and therefore courts lack jurisdiction to review a decision not to reopen a prior claim. *Sanders*, 430 U.S. at 109; 20 C.F.R. § 416.1403(a)(5).  Under the general rule, the Court does not have jurisdiction to review the ALJ's decision not to reopen Plaintiff's prior claim.  However, there is a limited exception to the general rule when the claimant has challenged the decision not to reopen on constitutional grounds. *Sanders*, 430 U.S. at 109.  The *Sanders* exception applies to any colorable constitutional claim of due process violation implicating either the right to a meaningful opportunity to be heard or to seek reconsideration of an adverse benefits determination. *Evans v. Chater*, 110 F.3d 1480, 1483 (9th Cir. 1997) (citing *Panages v. Bowen*, 871 F.2d 91, 93 (9th Cir. 1989)).  A challenge that is not "wholly insubstantial, immaterial, or frivolous" raises a colorable constitutional claim. *Boettcher v. Sec'y of Health and Human Servs.*, 759 F.2d 719, 722 (9th Cir. 1985).  However, the mere allegation of a substantive due process violation is not sufficient to raise a "colorable" constitutional claim to provide subject matter

1   jurisdiction.  *Hoye v. Sullivan*, 985 F.2d 990, 992 (9th Cir. 1992).  Thus, if Plaintiff

2   established a colorable constitutional claim, this Court has jurisdiction to review

3   the ALJ's decision not to reopen prior claims.

4          As noted by Defendant, Plaintiff's initial pleading does not specifically

5   mention due process or any other constitutional claim.  ECF No. 15 at 6-7, ECF

6   No. 12 at 5-8.  On reply, Plaintiff contends the ALJ denied Plaintiff's right to due

7   process by improperly finding that she had not made a request to reopen, when in

8   fact she had made an implied request by filing a new application.  ECF No. 16 at 1.

9   However, the Court concludes Plaintiff did not raise a colorable constitutional

10  claim of violation of her right to due process in her opening brief, and, the

11  argument is therefore waived.  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219,

12  1226 n. 7 (9th Cir. 2009) (finding an argument not made in plaintiff's opening

13  brief is waived).  Thus, this Court has no jurisdiction to review the ALJ's decision

14  not to reopen.

15         Even if a constitutional due process claim could reasonably be inferred from

16  the arguments made in Plaintiff's opening brief, the Court concludes any such

17  claim fails.  A claim may be "colorable" but also incorrect.  *Boettcher*, 759 F.2d at

18  722; *see also Subia v. Comm'r of Soc. Sec. Admin.*, 264 F.3d 899 (9th Cir. 2001).

19  First, Plaintiff's argument is based on the application of the HALLEX, which is a

20  purely internal manual, is not binding, and does not impose judicially enforceable

1  duties.  *Lowry v. Barnhart*, 329 F.3d 1019, 1023 (9th Cir. 2003); *Moore v. Apfel*,

2  216 F.3d 864, 868 (9th Cir. 2000).  As such, any error committed by the ALJ in

3  applying the provisions of HALLEX does not rise to the level of a due process

4  violation.

5      Second, due process requires that a claimant receive an opportunity to be

6  heard.  *Udd*, 245 F.3d at 1099.  Plaintiff does not allege that any evidence was

7  excluded from review because the ALJ declined to reopen, only that the ALJ did

8  not reconsider evidence already considered in the prior proceeding in the current

9  proceeding.  ECF No. 16 at 2.  However, Plaintiff's opportunity to be heard was

10  not violated by the ALJ's decision not to reopen because the evidence at issue[2] was

11  considered in the prior proceeding.  Plaintiff cites no authority, and the Court finds

12  none, indicating that claimant has a due process right to reopening of a prior

13  proceeding so that evidence already considered may be reconsidered in order to

14  bolster later-developed evidence in the later proceeding.  Thus, to the extent

15  Plaintiff could be considered to have made the due process argument, the Court

16  concludes such argument fails.  Therefore, because there is no valid, colorable

17  _____

18  [2] Plaintiff states the "most important" evidence affected by the ALJ's decision not

19  to reopen is the opinion of Dr. McClelland dated July 8, 2011, discussed *infra*.

20  ECF No. 16 at 2.

constitutional due process reason justifying an exception to the general rule that the decision regarding reopening a prior claim is not subject to review, the Court declines to review the ALJ's decision not to reopen in this case.

## B.    Credibility

Plaintiff contends the ALJ provided insufficient reasons for discrediting Plaintiff's symptom testimony.  ECF. No. 12 at 19-20.  An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).  "General findings are insufficient; rather, the

1   ALJ must identify what testimony is not credible and what evidence undermines

2   the claimant's complaints."  *Id.*  (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th

3   Cir. 1995); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he

4   ALJ must make a credibility determination with findings sufficiently specific to

5   permit the court to conclude that the ALJ did not arbitrarily discredit claimant's

6   testimony.").  "The clear and convincing [evidence] standard is the most

7   demanding required in Social Security cases."  *Garrison v. Colvin*, 759 F.3d 995,

8   1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920,

9   924 (9th Cir. 2002)).

10          In making an adverse credibility determination, the ALJ may consider, *inter*

11  *alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the

12  claimant's testimony or between her testimony and her conduct; (3) the claimant's

13  daily living activities; (4) the claimant's work record; and (5) testimony from

14  physicians or third parties concerning the nature, severity, and effect of the

15  claimant's condition.  *Thomas*, 278 F.3d at 958-59.

16          This Court finds that the ALJ provided specific, clear, and convincing

17  reasons for finding Plaintiff's statements concerning the intensity, persistence, and

18  limiting effects of her symptoms not credible.  Tr.  25-28.

19

20

### 1.    Lack of Treatment

First, the ALJ found Plaintiff received almost no treatment for her allegedly

disabling impairments between 2003 and August 2013, which the ALJ found

renders her subjective complaints less persuasive.  Tr. 26.  Medical treatment

received to relieve pain or other symptoms is a relevant factor in evaluating pain

testimony.  20 C.F.R. §§ 416.929(c)(3)(iv), 416.929(c)(3)(v).  The ALJ is

permitted to consider the claimant's lack of treatment in making a credibility

determination.  *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).  The ALJ

observed Plaintiff was terminated from mental health treatment due to cancelled

and missed appointments in May 2003.  Tr. 26, 431.  She returned to mental health

treatment on March 21, 2005, the same day she filed her first application for SSI.

Tr. 26, 440.  The next mention of mental health symptoms was after an eight-year

gap when, in August 2013, Plaintiff complained of bronchitis symptoms and stated

she had some depression.  Tr. 26, 407.  She requested a mental health referral and

received a prescription for Zoloft.  Tr. 26, 407-09.  In October 2013, she reported

the medication helped but she still felt depressed.  Tr. 26, 401-02.  During the

August and October 2013 appointments, Plaintiff's mood and affect were normal

and she did not complain of anxiety, panic attacks, or isolating at home.  The ALJ

observed there are no other mental health treatment records in evidence.  Tr. 26.

These facts reasonably support the ALJ's conclusion that Plaintiff's mental health

1  complaints are less convincing since there is little evidence that she complained of

2  them or pursued treatment.

3      Citing *Orn v. Astrue*, 495 F.3d at 638, Plaintiff contends her lack of

4  treatment "cannot support an adverse credibility finding."  ECF No. 12 at 20.  *Orn*

5  confirms that the Ninth Circuit's "case law is clear that if a claimant complains

6  about disabling pain but fails to seek treatment, or fails to follow prescribed

7  treatment, for the pain, an ALJ may use such failure as a basis for finding the

8  complaint unjustified or exaggerated."  495 F.3d at 638.  However, *Orn* also

9  indicates that when gaps in treatment are explained by the claimant's inability to

10  pay, credibility should not be impacted.  *Id.*; *see also Gamble v. Chater*, 68 F.3d

11  319, 321 (9th Cir. 1995).  Plaintiff asserts her financial situation prevented her

12  from obtaining medical care and notes several reports to that effect in the record.

13  No. 12 at 4 (citing Tr. 277, 290, 326).  Thus, the ALJ improperly considered

14  Plaintiff's lack of treatment as a basis for the negative credibility determination.

15  However, the ALJ properly considered other specific, clear and convincing reasons

16  for the negative credibility determination.  Therefore, the ALJ's credibility

17  determination is supported by substantial evidence and the improper consideration

18  of Plaintiff's lack of treatment is harmless error.  *See Carmickle v. Comm'r of Soc.*

19  *Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008); *Batson v. Comm'r of Soc. Sec.*

20  *Admin.,* 359 F.3d 1190, 1195-97 (9th Cir. 2004).

1

### 2. Objective Findings

2    Second, the ALJ found the medical records do not support the degree of

3  cognitive and social difficulty alleged.  Tr. 26.  An ALJ may not discredit a

4  claimant's pain testimony and deny benefits solely because the degree of pain

5  alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261

6  F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir.

7  1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989).  However, the medical

8  evidence is a relevant factor in determining the severity of a claimant's pain and its

9  disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2); *see also*

10  S.S.R. 96-7p.[3]  Minimal objective evidence is a factor which may be relied upon in

11  discrediting a claimant's testimony, although it may not be the only factor.  *See*

12  *Burch*, 400 F.3d at 680.

13    Cognitively, the ALJ noted that Plaintiff reported that her memory problems

14  caused her to forget the names of friends and relatives and forget why she entered

15  ————————————————

16  [3] S.S.R. 96-7p was superseded by S.S.R. 16-3p effective March 16, 2016.  The new

17  ruling also provides that the consistency of a claimant's statements with objective

18  medical evidence and other evidence is a factor in evaluating a claimant's

19  symptoms. S.S.R. 16-3p at *6. Nonetheless, S.S.R. 16-3p was not effective at the

20  time of the ALJ's decision and therefore does not apply in this case.

rooms.  Tr. 26, 280.  However, on July 2, 2012, she recalled two of three words

after five minutes and seven days later, on July 9, 2012, she recalled two of three

objects after an eight-minute delay and had no difficulty following a three-step

command.  Tr. 26, 347, 358.  On August 8, 2013, an exam showed normal memory

and judgment.  Tr. 26, 409.  On September 16, 2013, Plaintiff's mental status exam

was within normal limits.  Tr. 26, 387-88.  An October 29, 2013 exam showed

normal memory and judgment.  Tr. 26, 402.  The ALJ also noted Plaintiff is able to

concentrate well enough to drive.  Tr. 26, 53-54.

Socially, the ALJ noted that Plaintiff reported she was anxious around

people and experienced anxiety attacks.  Tr. 26, 262, 280.  However, the ALJ

observed that Plaintiff interacted appropriately with treatment providers and

examiners.  Tr. 26.  At the September 16, 2013 evaluation, Plaintiff presented as

generally open, cooperative and friendly and had no difficulty maintaining the

dialogue.  Tr. 26, 387.  The ALJ noted that Plaintiff reported she isolates herself,

but she also indicated that she goes out to stores as needed.  Tr. 26, 273.  Similarly,

the ALJ noted that Plaintiff had normal mood and affect, was alert and oriented,

and was "pleasant and conversant" at a physical exam on July 2, 2012, but one

week later, on July 9, 2012, Plaintiff appeared at a psychological exam with Dr.

Billings and had a depressed affect, was irritable, and cried frequently during the

interview.  Tr. 26, 347, 357.  Dr. Billings indicated Plaintiff did not appear to give

1    her best effort, which the ALJ found further detracts from credibility.  Tr. 27.  The

2    ALJ found Plaintiff's presentation at the psychological exam to be unpersuasive.

3    Tr. 26.  Additionally, when Plaintiff sought treatment for depression a year later,

4    her mood and affect were noted to be normal.  Tr. 27, 399.  All of these facts were

5    reasonably considered by the ALJ and support the ALJ's conclusion that the

6    evidence does not support the degree of limitations alleged.  Thus, this is a clear

7    and convincing reason supporting the credibility finding.

8        *3.    Inconsistencies*

9        The ALJ found Plaintiff has made inconsistent statements which undermine

10    her credibility.  Tr. 27.  A strong indicator of credibility is the consistency of the

11    individual's own statements with other information in the case record. S.S.R. 96-

12    7p.  In making a credibility evaluation, the ALJ may rely on ordinary techniques of

13    credibility evaluation.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).   The

14    ALJ cited numerous examples of inconsistencies in the record, such as

15    inconsistencies regarding Plaintiff's ability to get in and out of a bathtub and wash

16    her hair (Tr. 271, 282); her ability to drive (Tr. 53-54, 273); her ability to get along

17    with coworkers and supervisors and others (Tr. 355); whether she had auditory

18    hallucinations (Tr. 314, 357); her education (Tr. 45, 346, 355, 384); her ability to

19    complete household chores (Tr. 275, 346, 384) and whether she had friends (Tr.

20

282, 356).  Tr. 27.  These inconsistencies were all reasonably considered by the

ALJ and constitute a clear and convincing reason for the credibility finding.

### 4.    *Work History*

Fourth, the ALJ considered Plaintiff's poor work history in evaluating her

credibility.  Tr. 28.  The claimant's work record is an appropriate consideration in

weighing credibility.  *Thomas*, 278 F.3d at 958-59.  The ALJ noted Plaintiff had

low or no earnings in years before the alleged onset of disability.  Tr. 28, 240-41.

The ALJ inferred that Plaintiff prefers not to work outside the home and evaluated

her subjective complaints in that context.  Tr. 28.   This is another clear and

convincing reason supported by substantial evidence for the credibility finding.

## C.    Medical Opinion Evidence

Plaintiff contends the ALJ failed to properly evaluate the medical opinions

of Mary Pellicer, M.D.; Emma Billings, Ph.D.; Thomas Genthe, Ph.D.; and Jesse

McClelland, M.D.  ECF No. 12 at 9-19.

There are three types of physicians: "(1) those who treat the claimant

(treating physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor treat the claimant

but who review the claimant's file (nonexamining or reviewing physicians)."

*Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted).

"Generally, a treating physician's opinion carries more weight than an examining

1  physician's, and an examining physician's opinion carries more weight than a

2  reviewing physician's." *Id.* "In addition, the regulations give more weight to

3  opinions that are explained than to those that are not, and to the opinions of

4  specialists concerning matters relating to their specialty over that of

5  nonspecialists." *Id.* (citations omitted).

6        If a treating or examining physician's opinion is uncontradicted, an ALJ may

7  reject it only by offering "clear and convincing reasons that are supported by

8  substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

9  "However, the ALJ need not accept the opinion of any physician, including a

10 treating physician, if that opinion is brief, conclusory and inadequately supported

11 by clinical findings." *Bray,* 554 F.3d at 1228 (internal quotation marks and

12 brackets omitted). "If a treating or examining doctor's opinion is contradicted by

13 another doctor's opinion, an ALJ may only reject it by providing specific and

14 legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at

15 1216 (citing *Lester*, 81 F.3d at 830-31).

16        *1.     Mary Pellicer, M.D.*

17        Plaintiff contends the ALJ's reasons for rejecting the opinion of Dr. Pellicer,

18 an examining physician, were legally insufficient. ECF No. 12 at 9-13. On July 2,

19 2012, Dr. Pellicer examined Plaintiff and diagnosed visual problems including

20 myopia, eye convergence issue, and peripheral vision field cut; mental health

1    issues which result in anxiety attacks; joint pain in multiple joints, with a note to

2    consider arthritis; wrist pain with intermittent hand weakness and numbness, with a

3    note consider carpal tunnel syndrome; and intermittent back pain, with a note

4    consider body alignment versus degenerative disc disease.  Tr. 345-52.  Dr.

5    Pellicer opined that Plaintiff is able to stand and walk for four to six hours and sit

6    for six hour in an eight-hour day with more frequent breaks due to back and joint

7    pain; she is capable of lifting and carrying 10 pounds occasionally due to back and

8    joint pain; she cannot bend, squat, crawl, kneel or climb; she can only manipulate

9    occasionally due to wrist pain; she is able to hear, speak, and travel independently

10   and do all the necessary daily self-care activities; and her visual system is not

11   working properly and unless corrected will impact her ability to perform visual

12   tasks.  Tr. 350.  The ALJ assigned little weight to Dr. Pellicer's opinion.

13        Because Dr. Pellicer's opinion was contradicted by the opinion of Dr.

14   Staley, a reviewing physician (Tr.115-16), the ALJ was required to provide

15   specific and legitimate reasons for rejecting Dr. Pellicer's opinion.  *Bayliss*, 427

16   F.3d at 1216.

17        First, the ALJ assigned little weight to the opinion because Dr. Pellicer did

18   not review any records.  Tr. 28.  A medical source's familiarity with the case

19   record is a relevant consideration in determining the weight to give a medical

20   opinion.  20 C.F.R. § 416.927(b)(6).  Dr. Pellicer noted there were no records

1    available for review; by contrast, the reviewing physician, Dr. Staley, had multiple

2    records available for review.  Tr. 111-12, 345.  The ALJ noted that Dr. Pellicer was

3    not able to review imaging studies that showed no abnormality in the right wrist or

4    right knee, mild osteoarthritis in the right hip, and mild spondylosis in the lumbar

5    spine, suggesting there is little objective basis for some of Dr. Pellicer's findings.

6    Tr. 28, 373.  The ALJ's reasoning is supported by the evidence and this is therefore

7    a specific, legitimate reason for assigning less weight to Dr. Pellicer's opinion.

8          Second, the ALJ assigned little weight to the opinion because Dr. Pellicer

9    relied in large part on Plaintiff's less than fully credible subjective complaints.  Tr.

10   28.  A physician's opinion may be rejected if it is based on a claimant's subjective

11   complaints which were properly discounted.  *Tonapetyan v. Halter*, 242 F.3d 1144,

12   1149 (9th Cir. 2001); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602

13   (9th Cir. 1999); *Fair*, 885 F.2d at 604.  However, when an opinion is not more

14   heavily based on a patient's self-reports than on clinical observations, there is no

15   evidentiary basis for rejecting the opinion.  *Ghanim*, 763 F.3d at 1162; *Ryan v.*

16   *Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008).  Because Dr.

17   Pellicer had no records available to review, her opinion was based on her exam and

18   Plaintiff's self-reports.  Tr. 345-52.  However, the relevant exam findings were

19   based in large part on Plaintiff's self-report of her ability or were within her

20   control, such as range of motion and grip strength.  Thus, the ALJ reasonably gave

1    less weight to Dr. Pellicer's opinion Plaintiff's complaints were properly

2    discounted.  The ALJ's interpretation of the evidence is reasonable and this is a

3    specific, legitimate reason for rejecting the opinion.

4         Third, the ALJ found the restrictions assessed by Dr. Pellicer to account for

5    back and joint pain are based on symptoms rather than impairments.  Tr. 28.

6    However, Dr. Pellicer's diagnoses included joint pain in multiple joints with a note

7    that arthritis should be considered, and intermittent back pain, which could be

8    caused by body alignment versus degenerative disc disease.  Tr. 349-50.  As

9    Plaintiff observes, mild osteoarthritis and mild degenerative disc disease were

10   confirmed by x-ray subsequent to Dr. Pellicer's examination.  ECF No. 12 at 11,

11   Tr. 373.  Further, the ALJ found degenerative disc disease and degenerative joint

12   disease of the spine are severe impairments.  Tr. 21.  Thus, the distinction between

13   symptoms and impairments in Dr. Pellicer's findings does not necessarily

14   undermine her conclusions.  This is not a specific, legitimate reason for assigning

15   less weight to her opinion.

16        Fourth, the ALJ gave less weight to Dr. Pellicer's opinion because "the

17   claimant's back and joint pain were apparently not troublesome enough to prompt

18   her to pursue treatment in the decade preceding that evaluation except for one time

19   when she sought treatment for left shoulder pain in April 2010 and was assessed

20   with neck and shoulder sprain."  Tr. 28.  As discussed *supra*, it was inappropriate

for the ALJ to consider the lack of treatment since Plaintiff had no insurance and could not afford to pay for treatment.  *See Gamble*, 68 F.3d at 321.  This is not a specific, legitimate reason for assigning less weigh to the opinion.

Fifth, the ALJ noted inconsistencies in the evidence that undermine Dr. Pellicer's conclusions.  Tr. 28.  The consistency of a medical opinion with the record as a whole is a relevant factor in evaluating a medical opinion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn*, 495 F.3d at 631.  The ALJ noted that notwithstanding Dr. Pellicer's findings regarding Plaintiff's vision, Plaintiff testified she has no problem driving around town.  Tr. 29, 53-54, 349-50. The ALJ determined that Dr. Pellicer's findings of normal range of motion in the wrist and forearm and a negative Tinel's exam does not support the manipulative restriction assessed.  Tr. 29, 348-50.  Further, the ALJ noted that Dr. Pellicer's findings such as slow gait, slow and clumsy coordination, decreased grip and hip strength, and decreased hip and knee range of motion were not mentioned in any subsequent medical records.[4]  Tr. 29, 347-49, 397-406.  All of these

---

[4] Plaintiff argues that since there were no musculoskeletal exams mentioned in later records, Dr. Pellicer's findings were not inconsistent with later evidence.  ECF No. 12 at 12.  However, this supports the ALJ's conclusion that those symptoms were

1  inconsistencies were reasonably considered by the ALJ and constitute a specific,

2  legitimate reason for assigning less weight to Dr. Pellicer's conclusions.

3        Sixth, the ALJ assigned less weight to Dr. Pellicer's opinion because the

4  ALJ questioned Plaintiff's effort on the exam.  The ALJ noted that one week after

5  Dr. Pellicer's exam, Dr. Billings indicated Plaintiff did not appear to give her best

6  effort during a psychological examination, leading the ALJ to question whether

7  Plaintiff gave her best effort during Dr. Pellicer's exam.  Tr. 29, 359.  Plaintiff

8  notes that Dr. Pellicer commented that Plaintiff was "cooperative during the

9  exam," suggesting that the ALJ's inference is unfounded.  ECF No. 12 at 12.

10  While the ALJ's reasoning may not by itself be particularly persuasive, it is within

11  the bounds of the ALJ's duty to interpret the evidence, s*ee Morgan*, 169 F.3d at

12  599-600, and, in combination with other inconsistencies identified by the ALJ, it is

13  a reasonable inference.  This is a specific, legitimate reason for giving less weight

14  to Dr. Pellicer's opinion.

15        The ALJ cited a number of reasons for assigning less weight to Dr. Pellicer's

16  opinion.  Some of the reasons were not supported by the evidence or were

17  otherwise insufficient.  However, the erroneous reasoning is harmless because the

18

19  not the result of disabling impairments since they were not assessed or treated

20  elsewhere in the record.

1   ALJ provided other specific, legitimate reasons supported by substantial evidence

2   for the weight assigned to Dr. Pellicer's opinion.  *See, e.g., Morgan*, 169 F.3d at

3   601-02.  Errors that do not affect the ultimate result are harmless.  *See Parra v.*

4   *Astrue*, 481 F.3d 742, 747 (9th Cir. 2007).  Thus, the ALJ provided legally

5   sufficient reasons for assigning less weight to Dr. Pellicer's opinion and the

6   outcome is the same despite any improper reasoning.

7          2.     *Emma Billings, Ph.D.*

8          Plaintiff contends the ALJ did not provide a specific, legitimate reason for

9   rejecting the opinion of Dr. Billings, an examining psychologist.  ECF No. 12 at

10  13-16.  Dr. Billings completed a psychological assessment on July 9, 2012.  Tr.

11  354-59.   Dr. Billings diagnosed major depressive disorder, single episode,

12  moderate; social phobia; panic disorder, without agoraphobia; and personality

13  disorder, not otherwise specified, with borderline and avoidant characteristics.  Tr.

14  358.  She opined that Plaintiff would not be able to maintain any sort of

15  employment under the circumstances observed; she is likely to have difficulty

16  working in any occupation that would require public contact; and she demonstrated

17  some difficulties with attention and concentration, although pace was average.  Tr.

18  359.  Dr. Billings noted Plaintiff did not appear to be putting forth her best effort.

19  Tr. 359.  The ALJ gave little weight to the opinion.  Tr. 29.

20

1    Because Dr. Billings' opinion was contradicted by the opinions of the

2    reviewing psychologists, Dr. Donahue and Dr. Fligstein (Tr.102-04, 117-18), the

3    ALJ was required to provide specific and legitimate reasons for rejecting Dr.

4    Billings' opinion. *Bayliss*, 427 F.3d at 1216.

5    First, the ALJ found the opinion was primarily based on Plaintiff's less than

6    fully credible subjective complaints and presentation. Tr. 29. As discussed *supra*,

7    a physician's opinion may be rejected if it is based on a claimant's subjective

8    complaints which were properly discounted, *Tonapetyan*, 242 F.3d at 1149, but

9    when an opinion is not more heavily based on a patient's self-reports than on

10    clinical observations, this is not a sufficient basis for rejecting the opinion.

11    *Ghanim*, 763 F.3d at 1162. Dr. Billings' opinion regarding Plaintiff's limitations is

12    based on Plaintiff's self-report and a mental status exam. Tr. 354-59. Plaintiff

13    contends the mental status exam is an objective measure and therefore Dr. Billings'

14    opinion is not based primarily on Plaintiff's self-report. ECF No. 12 at 14-15.

15    However, Dr. Billings indicated "[s]he did not appear to be putting forth her best

16    effort when responding to the questions" for the mental status exam. Tr. 358. This

17    calls into question Plaintiff's performance on the mental status exam and,

18    therefore, the ALJ reasonably found the report is primarily based on Plaintiff's less

19    than fully credible self-report.

20

Second, the ALJ observed inconsistencies between Dr. Billings' findings and other evidence in the record.  Tr. 29.  As noted *supra*, the consistency of a medical opinion with the record as a whole is a relevant factor in evaluating a medical opinion.  *Lingenfelter*, 504 F.3d at 1042.  The ALJ noted that despite Dr. Billings' findings that Plaintiff was irritable, depressed, cried frequently, and spoke in a slurred and rapid manner that was difficult to understand, when she was seen by Dr. Pellicer the previous week she was pleasant and conversant, her mood and affect were normal and appropriate, and her speech was fluent.  Tr. 29, 345, 347, 358.  The ALJ concluded this indicates Plaintiff was exaggerating during her evaluation with Dr. Billings.  Tr. 29.  Further, the ALJ noted Plaintiff told Dr. Billings she had no friends, but later completed a disability report indicating she had friends.  Tr. 29, 282, 356.  Additionally, the ALJ found Dr. Billings' notes that Plaintiff did not appear to put forth her best effort indicate Plaintiff was attempting to portray greater limitations than she actually experienced.  Tr. 29, 357, 359.  All of these inconsistencies were reasonably considered by the ALJ and constitute a specific, legitimate reason for rejecting Dr. Billings' opinion.

Plaintiff contends the inconsistencies between her presentation to Dr. Billings and Dr. Pellicer are consistent with her testimony that she has good days and bad days, and that her behavior during Dr. Billings' evaluation was triggered by discussing sensitive personal information.  ECF No. 12at 15, Tr. 55.  However,

1   Dr. Billings did not discuss or identify those reasons as factors contributing to

2   Plaintiff's behavior.  While they may be rational and possible explanations for

3   Plaintiff's behavior, the ALJ's conclusion is also rational and based on evidence in

4   the record.  The court must uphold the ALJ's decision where the evidence is

5   susceptible to more than one rational interpretation.  *Magallanes v. Bowen*, 881

6   F.2d 747, 750 (9th Cir. 1989).  Thus, the ALJ's reasons for giving less weight to

7   Dr. Billings' opinion are legally sufficient.

8       *3.    Thomas Genthe, Ph.D.*

9       Plaintiff contends Dr. Genthe, a psychologist, examined Plaintiff on

10  September 16, 2013 and completed a DSHS Psychological/Psychiatric Evaluation

11  form.  Tr. 383-88.  Dr. Genthe diagnosed major depressive disorder, mild, with

12  anxious distress, and panic disorder with agoraphobia.  Tr. 385.  He assessed seven

13  moderate limitations and one marked limitation in the ability to complete a normal

14  work day and work week without interruptions and psychologically based

15  symptoms.  Tr. 385-86.  Dr. Genthe opined that Plaintiff's prognosis is good, that

16  she would be unable to function adequately in a work setting until her symptoms

17  are managed more effectively, but given her response to treatment, a period of

18  three to six months of treatment might be sufficient to address her needs

19  moderately well and regain the necessary functioning for full time work related

20  activities.  Tr. 386.

The ALJ assigned significant weight to Dr. Genthe's opinion that Plaintiff had no limitation or mild limitations in understanding, remembering and persisting in tasks by following very short and simple instructions; performing routine tasks without special supervision; making simple work related decisions, being aware of normal hazards and taking appropriate precautions; and asking simple questions or requesting assistance.  Tr. 30, 385.  The ALJ also assigned significant weight to Dr. Genthe's opinion that Plaintiff was moderately limited in the ability to understand, remember and persist in tasks by following detailed instructions.  Tr. 30, 385.  The ALJ found these limitations were supported by the results of Dr. Genthe's mental status exam.  Tr. 30, 387-88.

However, the ALJ assigned little weight to Dr. Genthe's opinion that Plaintiff was moderately limited in the ability to learn new tasks and the other remaining limitations assessed by Dr. Genthe.  Tr. 30-31.  Because some of Dr. Genthe's opinion was contradicted by the opinions of the reviewing psychologists, Dr. Donahue and Dr. Fligstein[5] (Tr.102-04, 117-18), the ALJ was required to

---

[5] Plaintiff contends Dr. Genthe's assessment of a marked limitation in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms is uncontradicted and may only be rejected with clear and convincing reasons.  ECF No. 12 at 17.  However, Dr. Donahue and Dr.

provide specific and legitimate reasons for rejecting portions of Dr. Genthe's opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ gave little weight to the assessment that Plaintiff was moderately limited in the ability to learn new tasks because Dr. Genthe did not differentiate between simple and detailed tasks. Tr. 30. The ALJ found the results of the mental status exam administered by Dr. Genthe support the conclusion that Plaintiff has the ability to learn the types of tasks associated with work with an SVP of 1 or 2.[6] Tr. 30-31. Jobs with an SVP of 1 or 2 require a short demonstration or up to one month of training and correspond to unskilled work, which is work with simple duties which needs little or no judgment to do and can usually be learned in 30 days. DICTIONARY OF OCCUPATIONAL TITLES, Appx. C, subsection II; s*ee* 20 C.F.R. § 416.968. Plaintiff's mental status exam was within

---

Fligstein both opined that Plaintiff has no significant limitation in that area. Tr. 103, 117-18.

[6] Specific Vocational Preparation (SVP) is defined as the amount of time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DICTIONARY OF OCCUPATIONAL TITLES, Appx. C, subsection II, *available at* www.occupationalinfo.org/appendxc_1.html.

1  normal limits in all categories, including thought process and content, memory,

2  concentration, and judgment, suggesting Plaintiff has the capacity to perform

3  unskilled work.  Tr. 387-88.  Plaintiff does not specifically challenge this reasoning

4  and this is a specific, legitimate, reason based on substantial evidence for rejecting

5  the limitation.

6       Second, the ALJ assigned little weight to the other limitations assessed by

7  Dr. Genthe because they were based primarily on Plaintiff's less than fully credible

8  self-report.  Tr. 31.  The limitations rejected by the ALJ include moderate

9  limitations in: the ability to perform activities within a schedule, maintain regular

10 attendance, and be punctual within customary tolerances without special

11 supervision; the ability to adapt to changes in a routine work setting; the ability to

12 communicate and perform effectively in a work setting; and the ability to maintain

13 appropriate behavior in a work setting; and to set realistic goals and plan

14 independently.  The ALJ also rejected Dr. Genthe's assessment of a marked

15 limitation in the ability to complete a normal work day and work week without

16 interruptions from psychologically based symptoms.  Tr. 31, 386.  Since the ALJ

17 reasonably determined Plaintiff is less than fully credible, the ALJ may reject

18 limitations assessed by Dr. Genthe which are based primarily on Plaintiff's self-

19 report, but not limitations which are based on other findings.  *See Ghanim*, 763

20 F.3d at 1162; *Tonapetyan*, 242 F.3d at 1149.

1    Dr. Genthe's assessment includes the results of his clinical interview and a

2    mental status exam.  Tr. 383-88.  When asked to record all mental health

3    symptoms that affect Plaintiff's ability to work, Dr. Genthe referenced Plaintiff's

4    psychosocial history, which is entirely Plaintiff's self-report.  Tr. 383-84.  The

5    mental status exam notes Plaintiff was well-groomed with good hygiene; she was

6    organized in her thoughts and had no difficulty maintaining a dialogue; her speech

7    was within normal limits; and she presented as generally open, cooperative and

8    friendly.  Tr. 387.  These findings are inconsistent with the social limitations

9    assessed by Dr. Genthe, suggesting that those limitations are based on Plaintiff's

10    less than fully reliable self-report.  All other mental status exam findings were

11    within normal limits, which leads to the conclusion that none of the limitations

12    assessed by Dr. Genthe could have been based on the mental status exam findings.

13    Thus, his assessment of some limitations must have been based primarily on

14    Plaintiff's self-report.  Therefore, the ALJ reasonably rejected those limitations

15    based on the negative credibility finding.  This is a specific, legitimate reason for

16    rejecting those limitations assessed by Dr. Genthe which were not otherwise

17    credited.

18    *4.    Jesse McClelland, M.D.*

19    Plaintiff contends the ALJ should have considered the opinion of Dr.

20    McClelland, an examining psychiatrist.  ECF No. 12 at 18-19.  Dr. McClelland

1 prepared a psychiatric evaluation report on July 8, 2011.  Tr. 310-16.  He

2 diagnosed posttraumatic stress disorder, chronic; major depressive disorder, severe,

3 recurrent without psychotic features; and ADHD inattentive type.  Tr. 315.  Dr.

4 McClelland concluded that Plaintiff's thinking is "somewhat questionable" and her

5 ability to perform detailed and complex tasks may be affected.  Tr. 316.  He

6 opined that she might need special or additional instructions in order to perform

7 work activities and especially to learn a new job; her ability to accept instructions

8 from supervisors might be impacted; she may be able to perform simple and

9 repetitive tasks, but would struggle to stay on task; she would have problems

10 taking instructions from supervisors; may have panic attacks related to social

11 interactions and in response to stressors which would likely impair her ability to

12 deal with the usual stress encountered in the workplace; she would likely struggle

13 to maintain regular attendance in the workplace; she would likely have

14 interruptions during the workday from panic attacks, getting off track due to

15 ADHD; and she may problems going to work related to being too anxious or

16 depressed or forgetting about work.  Tr. 316.

17      Because Dr. McClelland's opinion was contradicted by the opinions of the

18 reviewing psychologists, Dr. Donahue and Dr. Fligstein (Tr.102-04, 117-18), the

19 ALJ was required to provide specific and legitimate reasons for rejecting Dr.

20 McClelland's opinion.  *Bayliss*, 427 F.3d at 1216.

1    The ALJ gave no weight to Dr. McClelland's opinion because it was

2 rendered before the relevant period and was considered in connection with

3 Plaintiff's prior claim.  Tr. 28.  A statement of disability made outside the relevant

4 time period may be disregarded.  *See Turner v. Comm'r of Soc. Sec. Admin.*, 613

5 F.3d 1217, 1224 (9th Cir. 2010).  As discussed *supra*, the ALJ's decision not to

6 reopen the prior claim and review previously considered evidence is not subject to

7 review by the Court.  Although Plaintiff asserts "[m]ost ALJ's [sic] will consider

8 evidence prior to the alleged onset date, but rarely an ALJ will reject evidence and

9 refuse to consider [it] if it is prior to the alleged onset date,"  Plaintiff cites no

10 authority compelling the ALJ to consider this evidence.  ECF No. 12 at 19.

11 Because Dr. McClelland's opinion was previously considered with Plaintiff's prior

12 application, the ALJ's decision not to reconsider the evidence was reasonable.

13 This is therefore a specific, legitimate reason for assigning no weight to Dr.

14 McClelland's opinion.

## CONCLUSION

16    Having reviewed the record and the ALJ's findings, this Court concludes the

17 ALJ's decision is supported by substantial evidence and free of harmful legal error.

18 Accordingly, **IT IS HEREBY RECOMMENDED**:

19    1. Plaintiff's Motion for Summary Judgment, ECF No. 12, be DENIED.

20

1    2. Defendant's Motion for Summary Judgment, ECF No. 15, be GRANTED.

2                                        **OBJECTIONS**

3    Any party may object to a magistrate judge's proposed findings,

4    recommendations or report within **fourteen (14)** days following service with a

5    copy thereof.  Such party shall file written objections with the Clerk of the Court

6    and serve objections on all parties, specifically identifying the portions to which

7    objection is being made, and the basis therefor.  Any response to the objection

8    shall be filed within **fourteen (14)** days after receipt of the objection.  Attention is

9    directed to FED. R. CIV. P. 6(d), which adds additional time after certain kinds of

10   service.

11   A district judge will make a *de novo* determination of those portions to

12   which objection is made and may accept, reject or modify the magistrate judge's

13   determination.  The judge need not conduct a new hearing or hear arguments and

14   may consider the magistrate judge's record and make an independent

15   determination thereon.  The judge may, but is not required to, accept or consider

16   additional evidence, or may recommit the matter to the magistrate judge with

17   instructions.  *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000); 28 U.S.C.

18   § 636(b)(1)(B) and (C), Fed. R. Civ. P. 72; LMR 4, Local Rules for the Eastern

19   District of Washington.

20

A magistrate judge's recommendation cannot be appealed to a court of appeals; only the district judge's order or judgment can be appealed.

The District Court Executive is directed to enter this Report and Recommendation, forward a copy to Plaintiff and counsel, and **SET A CASE MANAGEMENT DEADLINE ACCORDINGLY.**

DATED March 31, 2017.

s/Mary K. Dimke
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE